May it please the court, Ennie is appealing from her conviction of the four counts of witness tampering in violation of 18 U.S.C. 1512b3 and two counts of making false statements in violation of 18 U.S.C. section 1001a2. I just want to make a couple of sentences about Ennie Edwards and about her background. Ennie Edwards came, and I'm using the shorthand version of her name, Ennie, which is easier to pronounce for me. You don't speak Mongolian? Not yet, Judge. All right. Ennie came to this country as a young immigrant from Mongolia. She attended college here. She got married here. She's raising a family here, and she speaks four languages, including English, Polish, Mongolian, and Russian. Because of her life history, she is the gravitational center of her family, and she has a very strong personality. The first point that we raised in our brief was the insufficiency of the evidence claim that the evidence was insufficient to prove beyond a reasonable doubt that Ennie knowingly attempted to corruptly persuade Michael Roselle in violation of 1512b3. So here's my issue with that. If these telephone calls placed by Mr. Roselle to Ennie had involved her saying to him, if anybody contacts you, stay quiet. Don't speak. Raise your Fifth Amendment rights. Anything along the lines of keep quiet. That would, to me, feel like a very different case from her saying to the man who was, after all, the one married to the cousin, Tasha, here's your story. You guys dated. You got married. You lived together. That is not silence. That is something that's far more inculpatory, in my view, and it seems to me a jury could regard that as her urging him to tell a lie to the investigators. I understand your question, Your Honor. You've described the easiest case where if she had just asked Michael Roselle to assert his Fifth Amendment rights, she probably would be violating the statute. Or she just said, you know, keep mum, anything along those lines. I would think that that would be very hard to attack. Right. But that's not what she did. Right. But what she didn't do in this case was tell Michael Roselle to lie. Well, I don't know. Couldn't a jury infer in this conversation? After all, Roselle knows how he met the ex-wife, the relative. Roselle knows, you know, how long they were married. He knows why they got divorced. She doesn't need to feed a story to him. She never told him to tell the investigators that the marriage was not arranged. And what she did tell him to do, what she was counseling him to do, was to limit his statements to just the bare facts of what happened. Your sufficiency argument, frankly, has real trouble because of these kinds of problems. We can all imagine situations in which the facts were different, and there would not be sufficient evidence, but we give the jury quite a lot of leeway to interpret testimony in front of it and to weigh it. I wonder if you could address the jury instruction question on this. Sure. And in particular, what concerns me, I understand your argument to be that, in essence, nothing in these jury instructions addressed the corruptly element of the charged offenses on obstruction. I would have thought the phrase, without justification, that the trial judge included in his draft of the instructions would have done the trick pretty well, and yet you and the government both agreed to remove that. So help me out here. The problem with the instructions is they did not define the element of corruptly at all. And if you read the instructions as they're written, they don't describe necessarily illegal conduct. I actually don't recall that argument where the government and the defense were hashing out the jury instructions and why we took out that particular clause. But looking at the jury instruction as it was given, it's clearly deficient in describing the central element of the offense, the intent element of the offense. And I think the Arthur Anderson case, the Supreme Court case, clearly states that this corrupt element must be included in order to find someone guilty of witness tampering or obstruction of justice. Right. It actually is back-to-back, literally, in the instruction conference, where the government says remove without justification. You say we're not saying she had a justification. We're saying she did not interfere. So you don't object to the removal of without justification. And then you go on to say, well, but we think corruptly needs to be in here. I don't want to waive that argument. And the judge says you're not waiving that objection. But I'm concerned, though, that the removal of without justification, which would at least have given you a leg to argue the kinds of things you want to argue, looks like it could be argued to be invited error at this point. Well, when I hear the word justification, I think of an affirmative defense. And we hadn't raised justification of any sort as an affirmative defense to what happened here. We were saying that she did not have any corrupt intent. And our argument at the trial and here today is that she was called by Michael Rizal, who was set up to call her by the investigators to get her to make incriminating statements. And under those circumstances and reading the totality of the conversations, she did not have corrupt intent. She didn't unknowingly, corruptly try to interfere with an investigation. Well, that's the question, isn't it? I mean, why couldn't the jury regard the rest of the evidence as circumstantial evidence that she had precisely that intent, that she was trying to uphold this story, that the marriage was a legitimate one, that she's asking Rozelle to lie, to cover up? Well, that's the sufficiency point. Well, but it's also a harmless error point. And so that's where I'm going. Even if we were to agree with you that when all was said and done, it was a mistake not to have something like the Arthur Anderson language in describing what corruptly meant, even so, given all the rest of the evidence, I don't see how the jury could have convicted her without finding that she was deliberately throwing a monkey wrench into the government's investigation. Well, the question involves a lot of moving parts because our sufficiency of the evidence argument is based on the fact that there really was no evidence that Annie Edwards was involved in this conversation and trying to interfere with the investigation in a knowingly corrupt way. But I understand that's your argument, and I'm sure you argued it to the jury, and the jury might have bought it, but they didn't. And so how can you convince us that no jury could see it the way this jury did? Well, but they also were not instructed on it, and they were not instructed on the knowingly corrupt intent element. Well, they are instructed that she attempted to persuade someone to interfere with the government's investigation or prosecution of an illegal activity and that she did it deliberately. She intended to interfere with and delay and prevent and the information related to it. So all of these instructions. There's a lot that is before the jury, even though this one slice of the word corruptly isn't. But the way this instruction reads is that it completely takes out this intent element. Why does it take out the intent element when the district court says she did it deliberately knowing what she was doing rather than acting in ignorance or by mistake? You can see how there could be conversations where someone is advising someone not to cooperate with law enforcement that don't violate the law but would still be found illegal if you followed these instructions literally. But that's not this case, was it? So why is this not harmless, though? It's a high burden. If the instructions are wrong, it's a high burden for harmlessness. But what argument were you unable to make or unable to support with instructions? First, I would say that it's not harmless because Annie Edwards had a due process right to a fair trial, and this right was denied by the fact that the judge got the instructions. That's sort of circular. The other point I would make is that the jury could have found her guilty based on conduct that was really not illegal. Talking to a friend. If the jury believed that she was just talking to this friend, as I argued, and that she was advising the friend to be careful in these contacts. If the jury had believed her testimony, is that what you're saying, which they could have done? If they had believed her testimony or, right, if they had believed her testimony and thought that she was talking to Michael Rosell as an old friend, which is clearly what happened here, and she was advising him using the strength of her personality, which is a strong personality, to conduct himself very carefully in a limited and circumspect way with the investigators, she did not break the law. And the jury could have still found her guilty under these jury instructions that she broke the law. So under those circumstances, and the circumstances of this case, I don't see how it possibly could be harmless error. The other issue relating to the instruction, and the harmless error, I guess, issue relates back to the sufficiency of the evidence, is that this investigation, these phone calls were initiated by government investigators. So it seems difficult to reach the conclusion that Annie Edwards, who was on the receiving end of a telephone call with a cooperating individual who was being coached to induce her to make certain comments to the best of his ability. Did you make an entrapment defense argument? It's not an entrapment defense, but I do think it goes to the sufficiency of the evidence argument. But she repeats over and over again this story. It's not as though, you know, he lures her into saying something in some inadvertent way. There can be no doubt that this is the message she's trying to convey. She does repeat it. I think what you're getting there is who Annie Edwards is and her personality. And if you listen to the audio of the tapes, you get a feel for who she really is. She's a strong person. She came here by herself. Well, I understand all of that, but I don't see why the jury couldn't understand the repetition of here's your story, here's your story as an effort to throw the government off. I don't know. I would say because they were improperly, one of the reasons is because they were improperly instructed. Okay. Judge, I see that. Yeah, you can save a little rebuttal if you'd like. Thank you. Ms. Bonamici. May it please the Court, Deborah Bonamici on behalf of the United States. Your Honors, the evidence was more than sufficient. In fact, it was overwhelming in showing that the defendant in this case  And she did so by, as Your Honor, Judge Wood had commented, repeated over and over, repeating over and over again, a story for him to tell the investigators that she well knew was not true. So what are we going to do with these instructions, though? The instructions are not consistent with Arthur Anderson. They, I don't think, at the error level, I don't think they're salvageable. Whether there's harmless error, that's another issue. But where is the jury told that something along the lines of having an improper purpose, defining improper purpose as Arthur Anderson does, subvert, undermine, impede, all those things. I mean, the judge just basically says, I don't care that the word corruptly is in the statute. I don't think people understand it. So I'm not going to say anything about it. Well, Your Honor, as you're aware, the government did join the defense in seeking the use of the pattern instructions. So that was our choice, and that is what we proposed to the court. The government's position, though, is that read as a whole, the instructions provided the jury, that were provided, did not misguide the jury in the context of the evidence and the arguments that were made, presented to it. Which is essentially a harmless error argument. But what we're saying is that here the instructions would naturally be understood by the jury to incorporate a wrongful intent argument. How would they get that? How would they get that? I think the emphasis that Judge Wood gave just in the prior argument, focusing on to interfere with an instruction. Let's use the examples from Arthur Anderson. The mother who urges her son to take the fifth, or the wife who urges her husband to protect marital confidences. If you were representing such a defendant charged with this crime, how would these instructions let you make that argument? They wouldn't, and we concede that. The argument that we're making is that because that was not the case, lawyers, of course, are thinking of alternative scenarios and looking at the instructions to fit a variety of fact patterns, and that's appropriate and correct. But the argument that I would make is that our vantage point is different from the jury's. Jury has now listened to the evidence and arguments presented. This case did not present anything like that situation. The only evidence in this case was that the defendant repeatedly offered an innocent-sounding story for Mr. Rozell to tell, knowing it was false. What was the defendant's explanation of that? Actually, the defendant argued that it wasn't false, number one, that she had only intended to help a friend or help her cousin. She wanted to allow the cousin to remain in this country. She acknowledged that her intent was to have her live in the country, but she suggested that she believed that a relationship would develop over time between Mr. Rozell and her cousin. So she painted the story of the underlying events in an innocent light and then argued that she felt that Mr. Rozell was nervous and she was trying to basically calm him down, not trying to get him to lie. So it all depended on believing her when she said... Right, it depends on believing her or not about her purpose under a reasonable doubt standard and under flawed instructions that don't address her purpose, right? That's the problem I'm having. What I'm saying is that in that context, you needed to believe her when she said that the underlying marriage was not false. That's what I mean. I don't mean you have to believe her with respect to her purpose. You could not believe her with respect to her purpose in communicating with Mr. Rozell if you did not also believe that the marriage was not a sham. That she honestly believed it was, yeah. Yeah, exactly, and so that's the believing I'm talking about. And the way this case was presented, the jury had to believe that the marriage was a sham and that because otherwise the arguments the government made, which was she was directing him to lie, wouldn't have any basis, right? The lie is that there was nothing sham about this marriage. That's the lie. Did the instructions ever actually say you have to find that she was urging Mr. Rozell to lie? Just in so many words? No. I don't think they did. No, they didn't. So, I mean, that would have actually helped a lot too because you're assuming that they said that, but looking at the instructions they kind of dance around that point. And they don't say what we asked for them to say. We acknowledge that. When they talk about interfering with an investigation, I mean, in lawyers' terms, we can see that it would interfere with an investigation if someone took five, right, theoretically. Sure. But interfering in a more general context, in the context of the facts of this case, in my view, has a different connotation. Well, you can put that gloss on it. Again, I realize you asked for something else, but if you're going to say you intended to interfere and you had the Arthur Anderson examples in your mind, you'd want to say something along the lines of without legal justification for doing so. I mean, if you're taking the fifth, you have a legal right to do that. If you're asserting marital privilege, you have a legal right to do that. And at least it gets tested at the court. Right, but our argument is that, even if there is an error in the instructions, even if we understand that the absence of the corruptly language is an unsolvable problem, then there's still not a basis for reversal because the defendant has failed to meet his burden of showing that he was prejudiced by it. The defendant does not explain, as Your Honor, Judge Hamilton pointed out, what arguments he could not make or support. And he also does not explain, and to us this is very important, he does not explain how including that instruction would have assisted the jury in finding and acquitting the defendant. Because, again, it all gets back to the jury necessarily finding that the underlying marriage was a sham. They really could not have convicted her without that. And once they found that fact, then no definition of corruptly would have aided her. So to support the underlying finding that the marriage was a sham, that was primarily based on Mr. Rozell's testimony? It was Mr. Rozell's testimony. And some aspects, actually, of the recorded conversations referred to her understanding that the, for example, she at one point refers to him or says to him, you remember that she was going to be deported or she was in immigration proceedings. So there are some tidbits even in the recorded conversations that deal with that. But Mr. Rozell testified clearly that the purpose of this was to get her citizenship, was to keep her from being deported. And the defendant's testimony really did not do it, didn't actually undo it, just put a gloss on the facts. I'm just saying, so the jury had before it Mr. Rozell's testimony that this was really all for immigration benefit, nothing real about the marriage. And they have the recorded phone call of her saying you dated, you got married, you got divorced, that's all there is to it. About 20 times, yeah. So the jury can compare his testimony, could have believed him, apparently did believe him, and that way, I guess it's your point, there's nothing salvageable about what she said. That is the point. And the defendant has failed to demonstrate how the instructions, in this case on these facts, would have aided him. And so that is why the error is clearly harmless here on the instructions and reversal is not required, even acknowledging or accepting that there is information missing here, information that both parties requested. Ms. Bonamici, could I ask you to shift gears to sufficiency of the evidence on one of the false statement claims? Yes. In particular about financial support for the cousin, Tasha. Could you direct us to the evidence supporting the falsity of that assertion? Well, the evidence showed, for one thing, that the defendant posted a $4,000 bond to get her out of jail. I thought the evidence was that that came from somebody else, though. Her testimony was that it came from somebody else. But there was also, the evidence also showed that she had. But she was actually, is it your point, that she was actually the one who physically posted the bond, even though the funds came from elsewhere? Exactly, exactly. And there's evidence that she resided with the defendant for a period of time. Is there anything else? Well, subsequently, there was a ton of evidence about these bank accounts that they shared, and there was money going to and from Tasha and the defendant in these bank accounts, including a $10,000 payment from the defendant to Tasha and a $3,000 payment. In other words, there were large dollar figures going back and forth through these bank accounts. And there was also testimony that the defendant assisted in helping Tasha establish credit. Like, for example, the bank accounts, I believe she explained, as being set up to help Tasha have a bank account. So that was the financial support that I can remember. I'll acknowledge that my knowledge of the facts is not as strong as it usually is in this situation, so I'll go back and check the record on that, and if I find something else, I'll send a letter to the court if I might. That's all right. As for the, you know, I didn't answer the question about the without justification point that you asked of my opponent. And I believe that the reason for both sides for objecting to that language was the fact that this was not a justification case. There wasn't any evidence that put it in along the lines of recommending that somebody take five. And I think that at that stage, it wasn't as clear as it is now that that would have sufficed. You know, that might have plugged the hole that we wind up having at the end of the day. And so the government is not arguing that this was invited error on the defendant's part for that reason. Thank you. So if there are no other questions, the government would request that this court affirm the conviction and the sentence of the defendant. All right. Thank you very much. Mr. Frankel. Just a couple points in response, Your Honors. With regard to the relationship between Michael Roselle and Tasha, it was Roselle's testimony that he hoped to have sex with her and that he hoped that the relationship would grow and that it would become a more permanent relationship. So it wasn't entirely, as the government frames it, that there was no relationship at all and that it was a complete sham. And I think his testimony corroborates the defendant, Annie Edwards, testimony that all the parties involved believed and hoped that this would turn into a real relationship. Is that enough under immigration law to spare somebody from the sham marriage? In other words, I guess I'm asking whether shamness is assessed at the moment of the marriage or whether, if it turns out, like arranged marriages, kind of tevye, years later, it turns out it all worked out fine? I don't think we need to answer that question for this case because the issue is whether there was, whether Annie Edwards was trying to interfere with the investigation. And so you have to look at her statements and see if what she was saying was a flat-out lie or not. And our argument has been consistently that she wasn't lying. She was asking him to be careful, essentially, in his dealings with the investigators. Judge, in addition, Your Honors, in addition, there was no pressure or coercion applied in these conversations. This was just a conversation. And I believe we cited some cases in the brief and were asking the court to find that under this statute, this court find that there needs to be an element of pressure or coercion before someone could be found guilty of tampering with a witness. I suppose the interesting thing here, wasn't there some discussion that the statute of limitations had passed, that Mr. Rozell was actually out of the woods? The statute of limitations had long passed on the marriage fraud issue. Right. Okay, I see my time is up. Thank you very much. All right, thank you so much. Thank you. Thank you as well to the government. We'll take the case under advisement.